(April 14, 1987)

■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v GREGORY BROWN, Appellant.—Judgment, Supreme Court, New York County (Edward J. Greenfield, J.), rendered February 14, 1985, convicting defendant after a jury trial of murder in the second degree and sentencing him to an indeterminate term of 15 years to life imprisonment, reversed, on the law and as a matter of discretion in the interest of justice, the conviction is vacated, and the case is remanded for a new trial.

The defendant was convicted after a jury trial of murder in the second degree and sentenced to an indeterminate prison term of 15 years to life.

Of the several issues raised on this appeal by the defendant, the most important one in our view is presented by defendant's claim that the trial court's detailed review and analysis of the evidence in the charge exceeded the limits implicit in the governing statute, and that parts of the court's factual analysis could have improperly influenced the jury's consideration of the facts. A second issue meriting discussion is presented by defendant's claim that it was error to admit evidence that the police were assisted in locating and identifying the defendant by information received from an unidentified person on the basis of a description of the then unknown assailant in a television program.

On August 22, 1983, at about 6:30 P.M., in the neighborhood of Lexington Avenue and 99th Street, the deceased, Charles Jones, died shortly after he was stabbed by someone with whom he had been engaged in a heated argument extending over a period of time, involving the exchange of abusive remarks, shoving, and perhaps punches. The relevant events

were observed by three witnesses who testified at the trial, all of whom knew the deceased. There was evidence that just prior to the stabbing, the assailant, exhibiting a knife, said he would stab the deceased, and the deceased responded in substance that his adversary did not have "the heart" to do it.

One witness, Jane Boyd, observed the event from her 12th floor window. Two others, Emilio and Kathleen Cotto, brother and sister, 14 and 15 years old, respectively, at the time, observed the incident from different vantage points on the street.

On April 19, 1984, the defendant was identified in lineups by Emilio and Kathleen Cotto. Emilio Cotto, who testified that he had previously seen in the neighborhood the person who had stabbed Jones, stated at the time of the lineup that he was 80% certain of the identification. His sister Kathleen stated that she was absolutely certain.

The reliability of the identifications was significantly enhanced by the fact that the stabber had been observed to have an extended distinctive scar on his cheek, that the defendant had such a scar, and that he was identified by the two witnesses notwithstanding the fact that strips of tape had been applied to his cheek covering the scar as well as to the same part of the cheeks of the other lineup participants.

Turning to the defendant's claim that he was unfairly prejudiced by the detailed analysis of the evidence in the court's charge, discussion of the issue appropriately starts with consideration of CPL 300.10 (2). In relevant part, the subdivision provides with regard to the charge that the court must state "the material legal principles applicable to the particular case, and, so far as practicable, explain the application of the law to the facts, but it need not marshal or refer to the evidence to any greater extent than is necessary for such explanation."

The background to this statutory language was succinctly explained in Bellacosa, Practice Commentary (McKinney's Cons Laws of NY, Book 11A, CPL 300.10, at 532), where it was pointed out that it had become the practice previously, on the view that the law so required, for Trial Judges to present "a thorough summary of the evidence, and sometime in exhaustive and unnecessary detail." The commentator observed that the statutory language quoted above reflected a judgment that this "frequently served no useful purpose or worse, provided an inaccurate slant". *(Ibid.)*

Undeniably, the statutory language does not preclude a

Judge from entering into a more detailed review and analysis of the evidence than the statute requires. Where such an analysis is undertaken, as undeniably it was in this case, it manifestly becomes important for the Judge to exercise scrupulous care that the review of the evidence, and accompanying comments, are balanced and evenhanded, and that they do not inappropriately influence the jury in the discharge of its obligation to determine the factual issues. *(See, People v Williamson,* 40 NY2d 1073, 1074.) Where the facts seem strongly to preponderate in favor of the prosecution, as may reasonably be thought to have been the situation in this case with respect to the identification testimony, the problem of balance presented for a Judge who undertakes such a detailed analysis of the evidence obviously becomes more difficult.

Preliminarily, it should be said that the court's charge fairly summarized the relevant evidence, set forth comprehensively and accurately general, long-approved guidelines for evaluating the credibility of witnesses, and, with the single but important exception of the discussion of intent to kill, explained fairly and accurately the application of the law to the facts. In addition, however, and giving rise to the issue on this appeal, the court undertook a detailed exposition of the questions raised by the relevant testimony that the jury might appropriately consider in evaluating the reliability of that which they heard.

Viewed in a context other than that of a court charging a jury, almost all of that which was said with regard to the reliability of the identifications could be evaluated as an exceptionally able, searching and thoughtful review of the considerations that might reasonably be thought to bear on that issue. It is difficult to think of any factor reasonably relevant to the reliability of the identifications, whether favorable to the prosecutor or to the defendant, that was not set forth clearly by the trial court.

On the other hand, when this extended portion of the charge is examined carefully, and considered as a whole, the conclusion seems to us inescapable that the factors favorable to the prosecutor's theory were consistently presented with more emphasis, cogency and detail than those that might reasonably have been thought helpful to the defendant. We assume that this characteristic of the court's analysis of the factors bearing on identification represented the reasonable judgment of an experienced and able trial court as to the probative value to be attached to the various considerations that he discussed. But as we understand the distinction be-

tween the judicial function and the jury function, it is not acceptable in our jurisprudence for the trial court's personal evaluation of the evidence to be presented to the jury in a manner that could influence the jury's discharge of its fact-finding function. What occurred here presented, at a minimum, such a possibility.

Given the undoubted strength of the People's case with regard to the defendant's identification, it is at least arguable that the jury's acceptance of the reliability of the identification testimony may not have been influenced by the court's detailed factual analysis, notwithstanding the concerns we have expressed. A more substantial potential for prejudice seems to us presented by the court's charge with regard to the People's obligation to prove that the defendant intended to kill the deceased. This aspect of the charge seems to us clearly flawed, and flawed on an issue as to which the evidence presented a close question. This is a case in which the deceased died as a result of a single stab wound, after a heated argument in which just prior to the knife thrust, the assailant said that he ought to stab the deceased, and the deceased taunted him by saying that he did not have the heart to do it. Manifestly, these well-established circumstances made the issue of intent to kill a close one.

For reasons that are not explained in the record, neither the Trial Assistant nor defense lawyer requested the Judge to submit manslaughter in the first degree as a lesser included charge, and the trial court, apparently choosing not to override the preference of the two lawyers, did not exercise his discretion to submit that charge. As a result of the omission to submit manslaughter in the first degree, an unsatisfactory situation was presented in which a juror, convinced that the defendant was the stabber but not persuaded that he intended to kill, would have been under the painful duty of voting to acquit someone whom the juror believed had unjustifiably caused the death of the deceased.

The court's charge on the issue of intent to kill seems to us to have been seriously misleading, perhaps, in part at least, because manslaughter in the first degree had not been requested by the defense counsel and defense counsel did not argue the issue of intent to kill in his summation.

The trial court correctly informed the jury that it was the prosecutor's burden to prove intent to kill beyond a reasonable doubt, and made appropriate general comments on that issue. When this part of the charge is examined as a whole, however, it seems to us clearly to communicate the message

that a finding by the jury that the stabbing was intentional would almost necessarily require the further finding that the defendant intended to kill the deceased. This over-all impression was communicated by several aspects of the charge.

First, the trial court inexplicably focused on whether or not the stabbing of the deceased was intentional or accidental, giving several examples of circumstances under which such an event might be considered accidental. But the emphasis on whether the stabbing was intentional or accidental, addressing an issue that could not reasonably be thought to have been presented by the evidence, necessarily obscured the more critical question as to whether the stabber intended to kill the deceased. The absence of any explicit discussion of that issue, particularly when compared with the stress on whether the stabbing was accidental or intentional, had a clear capacity to minimize the significance of the more fundamental question.

The same misleading impression was implicit in the court's illustration of a person killed by a gunshot to the head as presenting a situation in which intent to kill might reasonably be inferred, surely an inappropriate illustration in a case in which the deceased died from a stab wound to the chest that penetrated his lung and heart. Similarly questionable was the trial court's comment that a statement by a defendant that he was going to kill the deceased would be supportive of a finding that such was his intent, which was followed by a reference to the defendant's alleged statement in this case about stabbing the deceased, in a context that could have implied to the jury that the defendant's statement would support a similar inference.

The misleading impression that seems to us to have been implicit in the court's charge with regard to intent was accentuated when the court followed this part of the charge with the observation that the principal issue presented at the trial was one of identification. Although this comment was understandable in light of the summations given by the two lawyers, it inevitably depreciated the significance of the issue presented by the evidence bearing on intent to kill, which on any realistic evaluation of the evidence presented a close factual question.

Although defense counsel's objections to the marshaling of the evidence did not specify this aspect of the charge, and accordingly it may not have been preserved as a matter of law, we think that the court's discussion of the issue had a substantial capacity to mislead the jury in its consideration of

the evidence relevant to a necessary element of the crime charged, and one that by any objective standard presented a close factual question.

We also believe that it was error to admit evidence that the arresting detective was assisted in locating and identifying the defendant by information provided by an unidentified person who heard a television broadcast concerning the event in which a description of the then-unknown assailant was given. This evidence constituted inadmissible hearsay. The hearsay character of this evidence would of course have been apparent if the officer described the details of the information given by that person which led him to the defendant. The fact that the testimony took the form of a conclusory statement that an unidentified person had given him information leading him to the defendant, and did not include the specifics, in no way negates its hearsay character. *(Cf., People v Holt,* 67 NY2d 819, 821.)

Nor do we think the error would have been an innocuous one even if we accept the District Attorney's argument on the appeal that the very most that was conveyed to the jury was that someone saw the program and reported that the defendant resembled the description. The ability of someone who knew defendant to recognize that he may have been the person described in a television program on the basis of information provided by witnesses to the original event could surely have been considered by jurors as providing some, perhaps substantial, confirmation of the identification testimony.

In view of our conclusion that the conviction must be reversed for reasons set forth above, we think it unnecessary to determine whether the erroneous introduction of this evidence, which was not timely objected to, would have independently required reversal of the conviction. Concur—Sandler, Milonas and Rosenberger, JJ.

Murphy, P. J., and Smith, J., dissent in a memorandum by Smith, J., as follows: Contrary to the conclusions of the majority, I find that the charge given by the trial court was both careful and fair. It did not contain any errors requiring reversal. Accordingly, I vote to affirm.

The facts are adequately stated by the majority. Defendant was convicted after a jury trial of murder in the second degree and sentenced to an indeterminate term of 15 years to life in prison. The deceased, Charles Jones, died on August 22, 1983, shortly after he was stabbed by someone with whom he had

been engaged in a heated argument. One witness, Jane Boyd, saw the occurrence from her 12th floor window but could not identify the assailant. Two other persons, Emilio Cotto and Kathleen Cotto, who were brother and sister, saw the event from different locations. Emilio Cotto knew the defendant from the neighborhood. Following defendant's arrest, Emilio viewed a lineup and was 80% sure that the defendant was the assailant. (At the time all six persons in the lineup wore tape since defendant had a scar on his face.) At the trial, Emilio testified that he was more than 80% sure of his identification. Kathleen was sure of her identification both at the lineup and at the trial. Defendant did not testify.

CPL 300.10 (2) requires a court to "state the material legal principles applicable to the particular case, and, so far as practicable, explain the application of the law to the facts, but it need not marshal or refer to the evidence to any greater extent than is necessary for such explanation." In this case the Trial Judge chose to marshal the evidence. While the majority opinion is both careful and well reasoned, I do not agree that either the charge on identification or intent was flawed.

With respect to the identification portion of the charge, the majority rightfully concludes that, "It is difficult to think of any factor reasonably relevant to the reliability of the identifications, whether favorable to the prosecutor or to the defendant, that was not set forth clearly by the trial court." Nevertheless, the majority concludes that "factors favorable to the prosecutor's theory were consistently presented with more emphasis, cogency and detail than those that might reasonably have been thought helpful to the defendant." The majority continues that "it is not acceptable in our jurisprudence for the trial court's personal evaluation of the evidence to be presented to the jury in a manner that could influence the jury's discharge of its fact-finding function." However, diplomatically the majority expresses itself, its conclusion is that the Judge felt the defendant was guilty and wrongfully influenced the jury to reach the same conclusion. There is simply no support for this conclusion in the record. Nor does the majority point to even one example of improper influence in the court's charge.

There was no error in the identification charge. The court stated what the evidence of identification was and then gave a charge on credibility.

Detective Gruntz testified that at the time of the lineups in

April 1984 (the killing occurred on Aug. 22, 1983), the defendant was 6 feet 1 inch and weighed 159 pounds. His age was 29 years. The Medical Examiner testified that the deceased was 5 feet 11 inches and weighed 150 pounds. He was 30 years old.

On September 7, 1983, Emilio Cotto gave a written statement that the stabber was smaller than the deceased, and that the stabber was 5 feet 7 inches or 5 feet 8 inches tall. At the trial Emilio Cotto stated that he had told Detective Gruntz that the stabber was 5 feet 7 inches or 5 feet 8 inches tall. He could not remember if he had also told Detective Gruntz that the stabber was shorter than the deceased.

Jane Boyd testified that the stabber was the smaller of the two men, who were fighting, but she was not sure because she did not have her glasses on and was viewing the street scene from her 12th-floor apartment. Her testimony concerning a description of the stabber was as follows:

"Q Did you know the other fellow that, that Charles was fighting with. Could you recognize him without your glasses?

"A No.

"Q Could you tell whether he was black or white?

"A I know he was black.

"Q Do you recall his height? Start with his height, could you recall that from, from back in Aug. of '83?

"A He was a little like a real, real thin, a real small guy.

"The Court: Was he smaller than Charles or bigger than Charles?

"The Witness: Smaller, real, real small guy from where I am looking because at the time I didn't have my glasses on. I couldn't really tell by being as high up as I was.

"Q What floor were you on?

"A The 12th."

Contrary to the Judge's statement in his charge that Kathleen Cotto had testified that the stabber was smaller than the deceased, Kathleen Cotto testified only that his hair was in an Afro style and that he had a Spanish appearance.

The court's charge on credibility was more than adequate. The court sought to inform the jury of how it could assess credibility and particularly with respect to the identification issue. Both sides had stated to the jury that the main issue in the case was identification.

Turning to the charge on intent, the majority labels it "clearly flawed". The majority objects to the charge because

"it seems to us clearly to communicate the message that a finding by the jury that the stabbing was intentional would almost necessarily require the further finding that the defendant intended to kill the deceased." This message, the majority concludes, was conveyed in part by the emphasis of the court on whether the stabbing was intentional or accidental and by an "inappropriate illustration", that intent to kill might be shown by a gunshot to the head.

Contrary to the majority's position, I find the charge on intent was entirely appropriate. Moreover, it is inaccurate to characterize that charge as focusing "on whether the stabbing was intentional or accidental". In the four-page charge on intent, the word accidental is used three times, in each instance to give a clearer meaning to intent. The illustration of a case involving a gunshot to the head also serves to give clearer meaning to intent. The intent charge reads as follows: "First, lets talk about the crime. Under our penal law, murder in the second degree is defined as follows: a person is guilty of murder in the second degree when: 1. with intent to cause the death of another person he causes the death of such person or a third person; that need not concern us; very simple definition. What has to be established in order to prove the crime of murder in the second degree is: 1. that it was this defendant who was involved. 2. that he caused the death of another human being. 3. that he intended to cause the death of another human being and if those elements have been established by the proof and *[sic]* the crime is made out. It is clear in this case that there was the death of a human being, you have heard the testimony of the medical examiner which established the cause of death, the stab wound which pierced the lung, pericardium and the ventrical of the heart that was the cause of death; you have also heard testimony which contends that this defendant, Gregory Brown, was the person who caused that death by using a knife so your job essentially is to determine was it Gregory Brown who was involved and was there an intent to cause the death of Charles Jones, *[sic]* with respect to intent, I want you to distinguish that from motive. We don't know anything in this case about motive, if, indeed, it was Gregory Brown who was engaged in an argument with Charles Jones at 99th Street and Lexington Avenue. We don't know why. We can't speculate, we dont *[sic]* have to know, for the purpose of determining whether there was an intent to cause death. Intent is a mental operation, you can't take a picture of it, you can't put your finger on it, you have to determine that on the basis of all the circum-

stances that you have heard about in the case. Sometimes there are accompaning *[sic]* words which give some indication as to what a person intends to do. If a person says, I intend to give you a bouquet of flowers and he then stabs you, you may say that maybe that stabbing was *accidental* as indicated by the words or maybe the words were deceptive. If *[sic]* there are *[sic]* a word accompaning *[sic]* an act which clearly indicates an intent like, 'I am going to kill you' or as—young Mr. Cotto reports to the Detective in the first instance, indicated that the assailant was going to stab Jones, and Jones rejoined that he wouldn't have the heart to do it, that may be considered by you as bearing on intent and then, of course, you may consider intent from the act itself. Intent need not be preplanned, thought out well in advance, intent can be formulated as of the moment and it is enough that the intent accompanies the act whenever the intent was formed. We sometimes talk about appreciateing *[sic]* the natural and probable consequences of ones act. It may be, for example, one person gives another person a shove, that it would not normally be expected that the natural and probable consequences would be that that person would fall down and split his skull and die. On the other hand, if one person puts a gun to the head of another, knowing it to be loaded and pulls the trigger, you may conclude from the act itself that there was an intent to cause death. So you look at all the circumstances to determine whether the act was intentional or unintentional. Sometimes what someone does may be *accidental,* you may have taken a knife out to show somebody and tripped and fall and suddenly it goes where you never intended it to go. So we say for the crime of murder to be established you must show that the act was not *sccidental [sic]* that it was not unintended but that, indeed, it was intended and that the intention was carried out and death caused by the actor." (Emphasis supplied.)

Turning to the admission of evidence concerning television broadcasts about the incident, most of the questions were not objected to. While Detective Raymond Gruntz was on the stand, the prosecutor elicited information that in cooperation with the Channel 7 Eyewitness News program, for a period of five days, a description of the location of the crime, type of crime and general description of the person sought were broadcast. The detective testified that he received information pursuant to these broadcasts. No objection was made until the prosecutor asked the detective where he had gone pursuant to the information. A defense objection was overruled and the

detective testified that he had gone to 1539 Lexington Avenue. After further testimony that the detective, following a conversation with someone in a second-floor apartment, had gone to the apartment of defendant's aunt on the first floor, the defense attorney objected to the whole line of questioning. The objection was overruled and the detective was permitted to testify that the inquiry had focused on a specific person. An objection to the name of the person was sustained.

On cross-examination the detective indicated that one person called the police after viewing the television segment, but that person did not witness the stabbing and did not give his own identity.

This testimony does not require a reversal. Even assuming the police obtained the defendant's name from the unidentified caller, it was clear that the caller had not witnessed the stabbing. This case is distinguishable from *People v Holt* (67 NY2d 819 [1986]), relied on by the majority, where a police officer testified, over objection, that he had arrested the defendant after conferring with the only eyewitness to a murder. The Court of Appeals ruled that such evidence constituted implicit bolstering but also noted that "such implicit bolstering may not have warranted reversal in and of itself" (67 NY2d, *supra,* at 821). In *Holt,* the conviction was reversed because of a failure of the Trial Judge to give an alibi charge as requested.

Finally, the fact that no charge was given on manslaughter in the first degree is not a ground for a reversal. First, no such charge was asked for, either by the prosecutor or the defendant. Secondly, the issue of intent was one of fact for the jury to consider. If it found no intent to kill, it was bound to acquit. The evidence of intent, however, fully supported its verdict. Thirdly, nothing in the record supports the speculation in the majority decision that a juror who was convinced that the defendant had unjustifiably caused the death of the decedent but was unconvinced of defendant's intent to kill him would have failed to follow the court's instruction to acquit.

I would affirm the conviction.