■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v DENNIS McLEAN, Appellant.—Judgment, Supreme Court, New York County (Allen M. Myers, J.) rendered July 5, 1988, convicting defendant, after a jury trial, of two counts of

attempted robbery in the first degree, and sentencing him to concurrent indeterminate terms of imprisonment of five and one half to eleven years, unanimously reversed, on the law and as a matter of discretion in the interest of justice, the judgment vacated, and the matter remanded for a new trial.

It is fundamental that, when the trial court in its charge enters into a review and analysis of the evidence, it must exercise the utmost care not to influence the jury in the discharge of its obligation to resolve the factual issues. *(People v Brown,* 129 AD2d 450, 452.) In this case, certain rhetorical questions and descriptive comments posed by the court during its charge clearly minimized the inconsistencies in the testimony of the prosecution witnesses and communicated disbelief of the defense arguments. We find that this charge was so prejudicial to defendant that it requires a reversal of the judgment and a new trial.

The evidence at trial showed that, on the night of October 9, 1987, complainants Sherwood McCrae and Merlin Pueryear had been drinking at "Jay's Bar," located on 125th Street near Amsterdam Avenue. They left the bar in the early morning hours and, in an effort to "sober up" the very intoxicated Pueryear for the train ride home, McCrae decided that they should take a walk. At 124th Street and Morningside Avenue, Pueryear began vomiting. Suddenly, defendant appeared and, according to both witnesses, demanded money. When he was refused, an altercation ensued, during which defendant struck Pueryear in the head with a bottle. Defendant then ran off. He was followed by McCrae, who spotted a police car and, when it stopped, McCrae spoke to the officer and got in. After driving around, McCrae saw defendant ringing the buzzers outside a building as 123rd Street and Manhattan Avenue. One of the officers called to defendant, and defendant came over to the car and, displaying a fresh cut on his hand, told the officer that the complainants had tried to rob him. According to defendant's mother, her building at the corner of 123rd and Manhattan Avenue did not have an intercom system, and the only buzzer was inside the lobby.

The defense was based primarily on the prior inconsistent statements of the complaining witnesses, particularly Pueryear, and on the inconsistencies between the trial testimony of the two men, which, counsel argued, revealed that the complainants lacked credibility and that the confrontation between them and defendant had been of a different nature than they claimed. There was inconsistent testimony between the complainants as to what time they had left the bar, where and

for how long they had walked, the time when the altercation took place, the location of the incident, whether defendant hit Pueryear with one quart bottle or two pint bottles and whether, before running off, defendant engaged in a fistfight with the complainants. Pueryear's trial testimony was also contradicted by his prior statements in which he had stated that he had been coming from the train when he was robbed, that he had been pushed into a lobby during the incident, that the incident took place at midnight, that the attack occurred on 123rd Street, that there had been an actual robbery rather than an attempt, and that he gave chase along with McCrae.

In its charge, the court prefaced its discussion of the inconsistencies in the prosecution's case by telling the jury that there were "significant and insignificant discrepancies," and then proceeded to imply its own opinion that the discrepancies herein were of the latter sort and should therefore be disregarded. As just one example, the court, referring to the differing testimony concerning the location and time of the crime, asked the jurors whether they could state the streets surrounding the Criminal Court building, observing that he himself was not sure what they were, and then asking, "What is the significance of the fact that some of you may not have known or remembered between what streets this building is located? Can one infer from that, that you did not serve as a juror in this case which is being tried in this building; or if you cannot remember at what time we began the trial on each day in the past * * * does it necessarily mean that you were not here? * * * Consider in your own experience how many People can relate a past experience with precise details and how many will remember every detail in exactly the same way." Not only did such comments belittle the defense arguments as to the discrepancies in the witnesses' testimony concerning the time and location of the robbery, but, by selectively referring to, and disparaging, only certain inconsistencies, the court encouraged the jury to disregard the other inconsistencies that it did not mention, such as Pueryear's statement to police that he had been pushed into a lobby during the attempted robbery. *(See, People v Davis,* 53 AD2d 870.) Moreover, the strong emphasis by the court upon the details of the complainants' testimony and the use of unnecessarily dramatic language, such as the repeated description of the crime scene as a "dark, deserted street in Harlem," particularly when contrasted with the court's obvious disdain for the defense arguments, was unfairly biased. *(See, People v Williamson,* 40 NY2d 1073.)

Finally, certain other aspects of the court's charge which, if standing alone, may not have resulted in such prejudice as to compel reversal, further diluted the People's burden. First, the court's reference to the presumption of innocence as a "device" could be seen to belittle the meaning of this fundamental principle. *(See, People v Hall,* 155 AD2d 344, 346-347.) Additionally, the court's supplemental reasonable doubt charge, given in response to the jury's request for clarification on the definition of reasonable doubt, repeatedly stated that a reasonable doubt is a "good reason, a sensible reason, a logical reason." While such language is not in and of itself erroneous, its repeated use, in this context, implied a belief on the part of the court that such a reason did not exist here.

Many of the improprieties in the charge were preserved for our review by defense counsel's timely objection. While counsel did not discuss every remark, we reach those to which he did not object in the interest of justice.

Accordingly, the judgment of conviction should be reversed and a new trial ordered. Concur—Kupferman, J. P., Sullivan, Ross, Ellerin and Rubin, JJ.