OPINION OF THE COURT
Steven W. Fisher, J.
The principal issue presented on this motion to set aside a verdict is whether a Judge who becomes incapacitated after evidence has begun at a jury trial may be replaced by another Judge to complete the trial without the defendant’s consent. The precise issue appears to be one of first impression in New York, and is presented unadorned by collateral considerations as the defendant, who strongly objected to the substitution, makes no claim that he was prejudiced by it.
The facts are undisputed.
By Queens County indictment No. 2416/92, filed on June 12, 1992, the defendant was charged with kidnapping in the first degree, seven counts of rape in the first degree, 12 counts of sodomy in the first degree, 18 counts of sexual abuse in the first degree, robbery in the first degree, two counts of assault in the second degree, criminal possession of a weapon in the fourth degree, and criminal possession of stolen property in the fifth degree.
On January 14, 1993, after the People moved to dismiss the sexual abuse charges, a jury trial was begun on the remaining counts before Justice John J. Clabby of this court.
Briefly stated, the People’s evidence was that the 19-year-old complainant was accosted by the defendant in the early morning hours of May 23, 1992 as she emerged from a subway station near the Brooklyn-Queens border on her way home from an evening spent with girlfriends at a Manhattan dance club. The defendant stabbed her in the upper thigh and then forced her at knifepoint to walk several blocks with her eyes *399 closed until they arrived at his one-room apartment. Once inside, he made her undress, and then blindfolded her with her own blouse and tied her to a bed.
He kept her in that position for most of the next 20 hours while he beat her, stole her property, and subjected her to at least four separate sexual attacks, each including acts of rape and sodomy, both oral and anal. He also offered her as a "birthday present” to his neighbor who raped her.[1]
The police arrested the defendant when they were able to find his apartment by locating a church the complainant had seen from his window. She subsequently identified him in a lineup and, acting under the authority of a search warrant, officers entered his room and discovered a knife, a bloody sheet, ropes tied to the bed, the complainant’s jewelry, her hairclip, her underwear, and flyers she had been given at the dance club.
By Thursday, January 28, 1993, the People’s case was drawing to a close. No proceedings were scheduled for Friday, January 29, 1993, out of respect for the defendant’s religious obligations.
When proceedings resumed on Monday, February 1, 1993, the parties were told that Justice Clabby had been admitted to the hospital for cardiac surgery and would be unable to return to work for at least two months. The matter was transferred to Justice Seymour Rotker whose courtroom was nearby. He told the jurors of Justice Clabby’s illness and dismissed them with instructions to return the following day.
After the matter was adjourned, defense counsel appeared in my courtroom to answer a calendar call in an unrelated case. As he awaited the production of his client, he approached the bench and apprised me of Justice Clabby’s condition and of the likelihood that an issue would arise over whether another Judge could be substituted to complete the trial.
In what was later described as an "academic” discussion, I told counsel that I saw nothing to prevent a substitution provided that the new Judge adhered to all rulings made by the original Judge and was furnished with the record of prior proceedings to become familiar with the evidence in the case. I asked counsel whether he could cite any potential prejudice *400 to his client as a result of a substitution, but the discussion ended before counsel could address the question.
The next day, Justice Rotker questioned the jurors and all gave assurances that they could render a fair and impartial verdict if the trial continued. Nevertheless, the defendant moved for a mistrial based upon Justice Clabby’s inability to continue the trial. The People opposed the motion, arguing that another Judge should be substituted.
Apparently, because Justice Rotker was scheduled for a vacation and would be unable to complete the trial if it continued, the matter was transferred, and it was ultimately assigned to me for all purposes. The parties appeared before me that afternoon.
Defense counsel immediately sought my recusal. He argued that, in the informal discussion he had initiated with me the day before, I had "indicated a predisposition” toward allowing the trial to continue with a substituted Judge. The substance of that discussion was then fully recounted for the record and is not the subject of dispute.
Counsel made clear that he was asking only that I recuse myself from deciding his motion for a mistrial. He stated that the defense had no objection to my presiding over the trial itself if it continued.
After extensive argument, I concluded that the question of whether one Judge could be substituted for another in the circumstances of the case was purely an issue of law which could be properly addressed on a motion to set aside any guilty verdict returned in the case (see, CPL 330.30 [1]). And, since the recusal motion was addressed solely to my deciding the substitution question, that issue could be addressed in a postverdict motion as well.
Consequently, in order not to delay the proceedings further, and to avoid ruling precipitously on a novel question of law, I reserved decision pending verdict and ordered the trial to proceed. In the event of acquittal, the issue would be rendered moot and the defendant would win early release. In the event of conviction, the parties would have a full opportunity to research and brief the issue in the context of a motion to set aside the verdict.[2]
*401 On Thursday, February 4, 1993, the People rested without presenting any additional evidence. The case was adjourned to the following Monday.
In the interim, I received and read the entire transcript of all prior proceedings in the case. Meanwhile the defendant unsuccessfully sought a stay of the trial from an Associate Justice of the Appellate Division, Second Department.
The resumption of trial was delayed one day by the illness of a juror. On Tuesday, February 9, 1993, the defendant took the witness stand in his own behalf.
The defendant testified that, on the day in question, he met the complainant when he stopped at an all-night convenience store on his way home. He asked her to go out which, he explained, meant that he was asking her for sex. She replied that she would not go out with him unless he bought her some cocaine from the dealers who sold drugs outside the store. He did so and she agreed to accompany him to his room.
Soon after they arrived, the defendant left the complainant to go downstairs to the bathroom. When he returned to the room, he found her sitting naked on the bed bleeding from her leg. She explained that she had torn her pants and cut her leg when she sat on a mirror which was under the cover.
The defendant and the complainant remained in the room together over the course of the next 10 hours. They engaged in no sexual activity, however, because the defendant was "turned off” by the complainant’s drug use and by her revelation that she had recently suffered from "crabs” and lice. The two spent most of their time together speaking of personal matters. The complainant told the defendant of her son and of the trouble she was having in her relationship with her boyfriend. The defendant spoke of his own children and of his indecision over whether to marry. Ultimately, the complainant left and the defendant did not see her again that day.
On the witness stand, the defendant resolutely denied having struck or robbed the complainant, or having offered her as a birthday present to his neighbor. He also denied having told a detective that he had had consensual sex with the complainant on the night in question.
On February 10, 1993, summations were delivered and I *402 charged the jury, submitting a total of 18 counts for consideration. The jury was also instructed on the issue of geographic jurisdiction which the defense had raised at trial.
The defendant had no exceptions to the charge as given.
The next day, the jury found the defendant guilty of kidnapping in the first degree, five counts of rape in the first degree, four counts of sodomy in the first degree, one count of robbery in the third degree, and one count of assault in the second degree. The jury acquitted the defendant of four counts of sodomy in the first degree and one count of robbery in the first degree. No verdict was returned on the lesser included offense of kidnapping in the second degree.
In the motion at bar, the defendant seeks to have the guilty verdicts set aside on the ground that it was improper for me to have completed the trial over his objection. He also renews his motion for my recusal.
I
There is no suggestion here that I have an actual or apparent bias arising from some personal interest in the outcome of the case or some connection with it that would require my disqualification as a matter of law (cf., Matter of Diana A., 65 Misc 2d 1034, 1036 [Fam Ct, NY County 1971, Dembitz, J.]; Judiciary Law § 14). And, absent such a legal disqualification, a Trial Judge is the sole arbiter of recusal and must be guided by personal conscience in making the decision (see, People v Moreno, 70 NY2d 403, 405 [1987]).
In this case, my knowledge of the circumstances surrounding the substitution issue came wholly from a conversation initiated by the very attorney who now seeks my recusal. Moreover, the facts of which I was told were already on the record, and therefore it cannot be said that I ever had an inappropriate awareness of nonjuridical data.
The fact that in casual conversation I expressed a preliminary view on a question of law without the benefit of research or argument should not disqualify me from considering the issue now. Were it otherwise, Judges who express any view on an issue of law, whether in an opinion, lecture, article or informal discussion, would forever after be barred from considering any similar issue in a judicial capacity.
Proof that a Judge has never considered or thought about an important issue of law, and therefore approaches it with a mind that is a complete tabula rasa, "would be evi *403 dence of lack of qualification, not lack of bias” (Laird v Tatum, 409 US 824, 835 [1972, Rehnquist, J.]). Finding no ground, apparent or real, to conclude that I could not "hold the balance nice, clear and true between the State and the accused” (In re Murchison, 349 US 133, 136 [1955], quoting Turney v Ohio, 273 US 510, 532 [1927]), I decline to recuse myself, and I turn to the issue of substitution.
II
It was once thought that the substitution of Judges in a criminal case was constitutionally impermissible even where both sides consented. As the court explained in Freeman v United States (227 F 732, 759-760 [2d Cir 1915]): "in a criminal case trial by jury means trial by a tribunal consisting of at least one judge and twelve jurors, all of whom must remain identical from the beginning to the end. It is not possible for either the government or the accused, or for both, to consent to a substitution either of one judge for another judge, or of one juror for another juror. The continuous presence of the same judge and jury is equally essential throughout the whole of the trial.”
But after the Supreme Court held it permissible for a criminal defendant to waive a jury (see, Patton v United States, 281 US 276 [1930]), the notion of a nonwaivable right to the same Judge throughout trial was discredited (see, e.g., Simons v United States, 119 F2d 539 [9th Cir 1941], cert denied 314 US 616; United States v LaSorsa, 480 F2d 522, 531 [2d Cir 1973]).
In 1944, the Supreme Court promulgated a rule which authorized substitution for an "absent” Judge after the return of a verdict in a criminal case even without the defendant’s consent.[3] In 1966, the rule was amended and expanded.
Rule 25 (a) of the Federal Rules of Criminal Procedure now provides that, "[i]f by reason of death, sickness or other disability the judge before whom a jury trial has commenced is unable to proceed with the trial, any other judge regularly sitting in or assigned to the court, upon certifying familiarity with the record of the trial, may proceed with and finish the trial.”
Rule 25 (a) does not discount a defendant’s legitimate inter *404 est in continuity or treat lightly a midtrial substitution of Judges. It demands a showing that the original Judge is not merely absent but is unable to proceed with the trial by reason of death, illness or other disability, and that the incoming Judge has become familiar with the trial record. Where such a showing is made, however, the defendant’s consent to the substitution is not required.
Rule 25 (a) has never been successfully challenged on constitutional grounds (cf., United States v McCallie, 554 F2d 770 [6th Cir 1977]; United States ex rel. Fields v Fitzpatrick, 548 F2d 105 [3d Cir 1977]; United States v LaSorsa, supra, at 531; see, American Bar Assn Standards for Crim Justice, Trial by Jury, standard 15-3.3; but see, 2 Wright, Federal Practice and Procedure § 392). Moreover, at least 16 States and territories have adopted similar rules permitting substitution for incapacitated Judges without the defendant’s consent.[4] 5In no instance has such a rule been held unconstitutional. Indeed, the Supreme Court has never recognized a constitutional right to the same Judge throughout trial in criminal cases (cf., United States v Volante, 264 US 563, 564 [1924]; United States ex rel. Fields v Fitzpatrick, supra, at 107).
Accordingly, at least in the absence of demonstrable prejudice (see, e.g., United States v Lane, 708 F2d 1394, 1397-1398 [9th Cir 1983]), it seems safe to say that a criminal defendant is not denied any right guaranteed by the US Constitution when the Judge presiding at the defendant’s jury trial becomes incapacitated and is replaced by another Judge who is thoroughly familiar with the record (United States v LaSorsa, supra, at 531; cf., People v Lewis, 71 AD2d 7, 11 [1st Dept 1979]).
Turning then to the law of New York, although the presence and active supervision of a Judge has been held to be indispensable at every phase of a criminal trial (see, People v Ahmed, 66 NY2d 307, 311 [1985]), court decisions on midtrial substitutions of Judges are sparce and largely inconclusive.[5]
*405 In Blend v People (41 NY 604 [1870]), the defendant was tried in the Court of General Sessions before a jury and three Judges, one County Judge and two Associate Justices of General Sessions. One of the Justices of Sessions did not appear following a dinner break, and it was soon discovered that he had returned to his home some 23 miles away. The County Judge simply appointed a Justice of the Peace, who was otherwise qualified to sit, to replace the absent Justice and the trial resumed over the defendant’s objection. In reversing the ensuing conviction, the Court of Appeals wrote: “When the Constitution requires a court to be constituted of a certain number of members, we are not a[t] liberty to determine judicially that two members of such court are so far useless appendages, that they may be changed during a trial to suit their convenience, and others substituted in their places” (supra, at 606 [emphasis supplied]).
It is certainly true that a defendant’s trial rights may not be compromised or substantially affected simply to suit the convenience of a Judge or jury (see, e.g., People v Michael, 48 NY2d 1, 9-10 [1979]; cf., Randel v Beto, 354 F2d 496 [5th Cir 1965]). In the case at bar, however, the need for substitution arose not out of any attempt to serve the convenience of the Trial Judge but out of his conceded incapacity.
In People v McPherson (74 Hun 336, 337 [3d Dept 1893]), the Court wrote that “[w]hen the trial of a case is once commenced it must proceed to the end before the same court and jury.” But in People v Brown (153 App Div 234, 235 [2d Dept 1912]), the Court held that "it was not legally essential that the court which pronounced judgment should be composed of the same justices, or indeed of any of the justices, who composed the trial court.”
In People v Rao (271 NY 98 [1936]), the Court of Appeals held that, where the original Trial Judge dies, a substituted Judge of the same court was authorized to decide the defendant’s motion for a new trial and to impose sentence (see also, People v Bork, 96 NY 188 [1884]).
In People v Glucksman (35 NY2d 341 [1974]), the Trial Judge became ill and the defendant consented to a substitution. On appeal from his ensuing conviction, however, he *406 argued that the substitution had been improper. The Court of Appeals upheld the conviction without addressing the defendant’s argument on substitution.
And, in People v Lewis (71 AD2d 7 [1st Dept 1979], supra), the Trial Judge became ill during jury deliberations. Without the defendant’s consent, another Judge was substituted. The new Judge received a jury request for a readback, ordered that the testimony be re-read, and then accepted a verdict. The Appellate Division held that, although no statute authorized the substitution and although the defendant had not consented to it, the limited actions of the substituted Judge were reasonable and did not deny the defendant any constitutional right. The Court made no judgment, however, on the "different problem” that would have been presented had the substituted Judge been called upon to elaborate on the law or to take some other action requiring recourse to the record (supra, at 12; see also, People v Cannon, 168 AD2d 356 [1st Dept 1990] [substitution held proper where original Judge became ill during jury deliberations and substituted Judge presided until verdict]).
Thus, there appears no firm precedent in the case law of this State on whether a midtrial substitution for an incapacitated Trial Judge is permissible without the defendant’s consent. Nor is the matter satisfactorily resolved by an examination of the State’s statutory law.
New York has no statute comparable to rule 25 (a). But the absence of such an authorizing provision has been held not to preclude substitution under appropriate circumstances (People v Lewis, supra, at 10; Simons v United States, 119 F2d 539, 544, supra; cf., People v Levy, 194 AD2d 319). There is at least one State statute, however, that does touch upon the issue.
Section 21 of the Judiciary Law provides that, except in an appellate court, a Judge "shall not decide or take part in the decision of a question, which was argued orally in the court, when he [or she] was not present and sitting therein as a judge.” And, it has been held that "[t]he jurisdictional policy of requiring the Judge to hear the argument of a motion to qualify him [or her] to make the order would certainly seem a fortiori to apply to the hearing of evidence” (Michel v Michel, 31 AD2d 313, 315-316 [4th Dept 1969]).
As so interpreted, the statute has been applied in criminal *407 cases, but only to prohibit substitution of Judges at hearings where testimony is presented, not to a jury, but to the court, and the substituted Judge is called upon to render a decision based upon an evaluation of testimony which he or she did not hear (see, e.g., People v Cameron, 194 AD2d 438 [suppression hearing]; People v Hooper, 22 AD2d 1006 [4th Dept 1964] [coram nobis hearing]). It would also seem clear that the statute would prevent a substitution of Judges after evidence has begun at a nonjury trial (cf., Bailey v State, 397 NE2d 1024, 1027 [Ind App 1979]).
When a substituted Judge is called upon to take over and complete a jury trial, however, no similar evaluation of testimony is required.
In a criminal case tried to a jury, the only ruling a Judge is called upon to make based upon evidence presented earlier in the trial is in response to a motion for a trial order of dismissal. The Judge may decide such a motion when it is made or may reserve decision pending verdict (see, CPL 290.10 [13).
In either event, the Judge must limit review solely to the legal sufficiency of the evidence, a question which relates only to whether the competent evidence presented, if accepted as true, would establish every element of the offense charged and the defendant’s commission of it (CPL 70.10 [1]). The Judge may not issue a trial order of dismissal based upon an assessment of the quality or weight of the evidence, or upon the Judge’s personal impression of the credibility of the witnesses (see, e.g., People v Vasquez, 142 AD2d 698, 700 [2d Dept 1988]; Matter of Holtzman v Bonomo, 93 AD2d 574, 575 [2d Dept 1983]).
Moreover, although under the former Code of Criminal Procedure, a Trial Judge was empowered to set aside a guilty verdict and grant a new trial when the verdict was "clearly against [the] evidence” (Code Crim Pro § 465 [6]; see, People v Ramos, 33 AD2d 344, 347 [1st Dept 1970]), that power was not carried forward into the Criminal Procedure Law. Trial Judges are now prohibited from setting aside a verdict as against the weight of the evidence (see, People v Carter, 63 NY2d 530, 536 [1984]). Indeed, New York’s current statutory scheme reserves the right of factual review exclusively to the jury and to the Appellate Division, and expressly withholds it *408 from the trial court (People v Bleakley, 69 NY2d 490, 495-496 [1987]).[6]
Because New York law establishes and adheres to a strict separation between the responsibility of the Judge to decide questions of law and the duty of the jury to find the facts, I conclude that neither section 21 of the Judiciary Law nor any other statutory provision prevents substitution under the circumstances here (cf., United States v Sundstrom, 489 F2d 859, 862 [2d Cir 1973], cert denied 419 US 934).
Moreover, an examination of court decisions in other States which prohibit midtrial substitutions[7] reveals little that is pertinent to New York law. For example, in Commonwealth v Claney (113 Pa Super 439, 173 A 840 [1934]), the court explained that substitution was improper because the incoming Judge, not having been in attendance during the presentation of evidence, could not fully exercise the judicial privilege and responsibility of "commenting upon the testimony and the credibility of the witnesses” (113 Pa Super, supra, at 440, 173 A, supra at 840).
Plainly this rationale has little relevance to modern New York criminal trial practice for, although it was once held permissible for Trial Judges in this State to offer opinions on questions of credibility presented by the testimony of witnesses (see, e.g., People v Quin, 1 Parker Cr Rep 340 [Sup Ct, Albany County 1852]; Stephens v People, 4 Parker Cr Rep 396 [Sup Ct, NY County 1859], affd 19 NY 549), that no longer is the case. New York Judges are now strictly forbidden from saying anything that might be taken by the jury as even the suggestion of an opinion (see, e.g., People v Mendes, 3 NY2d 120, 121 [1957]; People v Balkum, 94 AD2d 933, 934 [4th Dept 1983]; People v Viscio, 241 App Div 499, 501 [3d Dept 1934]; People v Carlsonakas, 241 App Div 232, 234-235 [1st Dept 1934]).
When marshaling evidence, for example, a Judge in this State is required to exercise the utmost care to review the testimony in a fair and balanced manner without in any way suggesting a view on the credibility of particular witnesses *409 (see, e.g., People v Williamson, 40 NY2d 1073 [1976]; People v Bell, 38 NY2d 116, 120 [1975]; People v McLean, 172 AD2d 256, 257 [1st Dept 1991]; People v Brown, 129 AD2d 450, 451-452 [1st Dept 1987]; People v Hollis, 106 AD2d 462, 464 [2d Dept 1984]).
Other State courts have prohibited midtrial substitutions on the theory that proper jury instructions can be given only by a Judge "who has heard the evidence and observed the witnesses * * * and is therefore steeped in the atmosphere and issues of the case” (State v Gossett, 11 Wash App 864, 872, 527 P2d 91, 96 [1974]; see also, Commonwealth v Thompson, 328 Pa 27, 29, 195 A 115, 117 [1937], supra; Durden v People, 192 111 493, 61 NE 317, 319 [1901], supra). But the contention that only a Judge who has seen and heard the witnesses is competent to charge a jury has little force in New York.
In charging a jury, a Judge in this State is required, inter alla, to "state the material legal principles applicable to the particular case, and, so far as practicable, [to] explain the application of the law to the facts” (CPL 300.10 [2]). No personal evaluation of the witnesses or impression of the "atmosphere” of the case enters into the performance of that function.
When deciding whether to submit a lesser included offense or to charge on a particular defense, for example, the Judge is called upon to view the evidence, not on the basis of a personal evaluation, but in the light most favorable to the defendant (see, e.g., People v Martin, 59 NY2d 704, 705 [1983] [lesser included offenses]; People v Butts, 72 NY2d 746, 750 [1988] [defenses]). Moreover, instructions on such subjects as evaluating the credibility of witnesses are general and depend on the category of the witnesses and not at all on the Judge’s personal assessment of them (see, e.g., 1 CJI[NY] 7.02 et seq.).
That a substituted Judge who has read the trial transcript can adequately fulfill a court’s charging responsibilities is amply demonstrated by the fact that the defendant in this case had not a single exception to the charge as given. Indeed, the defendant here has made no claim of cognizable prejudice whatsoever.
In my view, the fact that a substituted Judge has not personally heard the witnesses who testified before the substitution does not, in and of itself, impair that Judge’s ability to perform the judicial functions and responsibilities necessary for the completion of a jury trial in conformance with New *410 York law. I hold, therefore, that, in the absence of a showing of prejudice, a Judge who becomes incapacitated and unable to continue a jury trial after evidence has begun may be replaced by another Judge of coordinate jurisdiction who has reviewed and become thoroughly familiar with the trial record, and that such substitution may be made even without the defendant’s consent.[8]
It is the judicial policy of this State "to facilitate the administration of justice, a policy which seeks to eliminate delay in the trial of criminal actions or costly retrial, with due regard for the constitutional rights of a defendant” (People v Lewis, 71 AD2d 7, 12 [1st Dept 1979], supra).
Consistent with that policy, I hold that the substitution in this case was proper and that it would be entirely unwarranted to set aside this jury verdict and require a retrial, all in pursuit of a rule for which there is no good reason. The defendant’s motion should be denied in all respects.

. A man named Ron Franklin, alleged to be the neighbor, has since been arrested and indicted in connection with the incident. His case is pending.

. Additionally, I reasoned that, presented in the context of a motion to set aside a verdict, this important issue would be fully preserved for appellate review. If the motion were denied, the issue could be presented on *401 the defendant’s direct appeal (see, CPL 470.15 [1]); if the motion were granted, the issue could be presented on an appeal by the People from the order setting aside the verdict (see, CPL 450.20 [3]).

. See, Fed Rules Crim Pro former rule 25, now Fed Rules Crim Pro, rule 25 (b).

. See, Alaska Rules Crim Pro rule 25; Ariz Rules Crim Pro rule 19.5; Cal Penal Code § 1053; Del Ct Common Pleas Crim Rules rule 25; Fla Rules Crim Pro rule 3.231; Iowa Rules Crim Pro, rule 18 (7) (b); Md Rules Crim Pro rule 4-361; Mass Rules Crim Pro rule 38; Minn Rules Crim Pro, rule 26.03 (13); Nev Crim Pro Law § 175.091; ND Rules Crim Pro rule 25; Ohio Rules Crim Pro rule 25; PR Rules Crim Pro rule 186; VI Rules Crim Pro rule 25; Va Crim Pro Code § 19.2-154; Wyo Rules Crim Pro rule 26.

. Decisions on the substitution of jurors, as opposed to Judges, are of little relevance. New York law firmly recognizes a criminal defendant’s *405 right "to be tried by a jury in whose selection defendant has had a voice” (People v Page, 72 NY2d 69, 73 [1988]; see also, People v Buford, 69 NY2d 290, 297-298 [1987]). In contrast, a defendant has no voice in the selection of the Judge before whom trial will be conducted.

. The defendant makes no claim that, to the extent it precludes a Trial Judge from factual review of the evidence, New York’s statutory framework violates due process (cf., Capital Traction Co. v Hof, 174 US 1, 13-14 [1899]).

. See, e.g., State v Johnson, 55 Wash 2d 594, 349 P2d 227, 228-229 (1960); Durden v People, 192 Ill 493, 61 NE 317 (1901); Commonwealth v Thompson, 328 Pa 27, 195 A 115 (1937); State v McClain, 194 La 605, 194 So 563, 565 (1940); Bailey v State, 397 NE2d 1024, 1026 (Ind App 1979), supra.

. The substituted Judge, of course, remains bound by the rulings of the original Judge which are law of the case (see, United States v Sisk, 629 F2d 1174, 1179 [6th Cir 1980], cert denied 449 US 1084).