THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v RUDOLPH LEWIS, Appellant.

First Department, November 13, 1979

**APPEARANCES OF COUNSEL**

*Ursula Bentele* for appellant.

*Gregory L. Waples* of counsel *(Jerrold L. Neugarten* with him on the brief; *Robert M. Morgenthau, District Attorney),* for respondent.

**OPINION OF THE COURT**

BIRNS, J.

Defendant appeals from a judgment of the Supreme Court, New York County, rendered July 6, 1977, upon a jury verdict convicting him of one count of robbery in the first degree, two counts of robbery in the second degree and respectively sentencing him, as a second felony offender, to concurrent terms of 8 years to 16 years and 6 years to 12 years. He is incarcerated pursuant to the judgment.

The principal claim now made by defendant is that the recharge of the jury and acceptance of the verdict by a Judge who had no knowledge of the prior proceedings deprived defendant of his right to trial by jury including the right to have the same Judge preside throughout the trial. Defendant also presses a concomitant claim, that the jury's verdict, announced after it was informed in the midafternoon by the substitute Judge that it would be kept over a second night if it had further questions, was the product of coercion. In addition, defendant contends that he was convicted of a crime with which he never was charged and finally, that the court's "reasonable doubt" charge deprived him of his right to a fair trial.

The trial commenced on May 9, 1977 before Judge WILLIAM SHEA, a Judge of the Court of Claims (temporarily assigned to

the Supreme Court).[1] The evidence at trial disclosed that on February 4, 1977 defendant, armed with a deadly weapon and accompanied by two accomplices, forcibly stole microwave ovens which were stored inside the terminal of Universal Car Loading and Distributing Company. Lieutenant Robert Pratt of the security force assigned to the warehouse accosted defendant and his accomplices. The lieutenant identified defendant as the same person who on an earlier date, January 14, 1977, forcibly stole boxes of clothing from the terminal.

On the morning of May 18, 1977, the jury received its instructions from Judge SHEA and began deliberating. During the afternoon, it returned to the courtroom to receive supplementary instructions and to have testimony reread. That evening, the jury reported it had agreed upon a verdict with respect to some, but not all, of the four submitted counts of the indictment, and inquired of Judge SHEA concerning the course it should take if it were unable to reach a verdict on those counts. The jury then asked for a rereading of the charge pertaining to the four counts. The court, after conferring with the People and defense counsel, asked the jury to return a partial verdict, whereupon it would be discharged. The jury, however, stated it desired to continue deliberating, believing that it could return a verdict on all the submitted counts if parts of the charge were reread. The court, after reading parts of the charge as requested, sequestered the jury for the night.

On the morning of May 19, the jury resumed its deliberations. Judge SHEA, who had become ill, did not appear at court and, without objection by defendant, Judge LEVITTAN (a Judge of the Criminal Court of the City of New York temporarily assigned to the Supreme Court)[2] took Judge SHEA's place on the bench. In midafternoon of the same day, when the jury again requested that parts of Judge SHEA's charge be reread, defense counsel made two applications. The first was that a mistrial be declared in view of the protracted jury delibera-

---

1. Article VI (§ 26, subd b) of the New York State Constitution provides: "A judge of the court of claims may perform the duties of his office * * * and may be temporarily assigned to the supreme court in any judicial district." (See *Matter of Taylor v Sise*, 33 NY2d 357, 363-364.)

2. Article VI (§ 26, subd g) of the New York State Constitution provides: "A judge of a court for the city of New York [Criminal Court of the City of New York] * * * may perform the duties of his office * * * and may be temporarily assigned to the supreme court in the judicial department of his residence". (See *Matter of Taylor v Sise*, 33 NY2d 357, 363-364, *supra.)*

tions. This application was denied by Judge LEVITTAN. The second challenged the judicial role assumed by Judge LEVITTAN in the following language: "Mr. Traub: My second application was that I object to your—thought about it very carefully and I feel that the Court cannot sit here even for the purpose of having the reporter read the material back. Judge Shea is familiar with the case and he should be the one who should be sitting here. I would request that the Court give this request to Judge Shea."

Judge LEVITTAN denied this application also.

After the jury entered the courtroom, Judge LEVITTAN explained Judge SHEA's absence and directed the reporter to read the requested parts of the charge. Judge LEVITTAN told the jury, without objection by defendant, that "[i]f there are any other questions they will have to wait until tomorrow when Judge Shea will be here." The jury resumed deliberations and returned the verdict at bar without objection by defendant. The jury was unable to reach a verdict on the first count which charged defendant with first degree robbery on January 14, 1977.

 Whether one Judge may substitute for another during trial is an unresolved question in New York. We are of the opinion that in this case authority and reason support the substitution.

Defendant maintains that substitution of Judge LEVITTAN for Judge SHEA was improper because there is a blanket rule of constitutional dimension forbidding such substitution, absent defendant's consent. Defendant's contention is without merit. Although we find no statute in New York providing for substitution of an incapacitated Judge, there does not appear to be any statute forbidding the substitution without defendant's consent.

The People argue that section 7-a of the Judiciary Law, providing that a "criminal action * * * is not discontinued by a vacancy or change in the judges of the court", suggests a legislative intent against a blanket rule barring all substitutions. The People also cite section 21 of the Judiciary Law, providing that a Judge "shall not decide or take part in the decision of a question, which was argued orally in the court, when he was not present and sitting therein as a judge", as implicit recognition "that a substitute judge may nevertheless act in other capacities." These statutory provisions lack any

clear expression of legislative intent as to the general proposition of judicial substitution.

Our resolution of the question before us is assisted by recourse to the procedural rules of other jurisdictions—Federal, State and territorial. Rule 25 of the Federal Rules of Criminal Procedure (US Code, tit 18, Appendix), as amended in 1966,[3] provides that if during a jury trial a Judge dies, becomes ill or is otherwise incapacitated, another Judge may proceed with and complete the trial. Consent of the defendant or Government is not necessary. Seventeen States and territories[4] have rules similar to rule 25, providing for judicial substitution without the necessity of a defendant's consent.

The constitutionality of rule 25 and its State and territorial counterparts is not in doubt. The Supreme Court itself promulgated rule 25 in 1944. The propriety of the procedure established thereby has been upheld by various Courts of Appeals (see *United States v La Sorsa,* 480 F2d 522 [CCA 2d]; *United States v McCallie,* 554 F2d 770 [CCA 6th]; *United States v Bowser,* 497 F2d 1017 [CCA 4th], cert den 419 US 857; *United States v Lewis,* 460 F2d 257 [CCA 9th]; *United States v Bakewell,* 430 F2d 721 [CCA 5th], cert den 400 US 964; *Rogers v United States,* 350 F2d 297 [CCA 10th]; *Connelly v United States,* 249 F2d 576 [CCA 8th], cert den 356 US 921).

The limited actions of Judge LEVITTAN in this case were reasonable. In view of the jury's request, it was not inappro-

---

**3.** The rule, as amended and now in effect, reads:

"(a) During Trial. If by reason of death, sickness or other disability the judge before whom a jury trial has commenced is unable to proceed with the trial, any other judge regularly sitting in or assigned to the court, upon certifying that he has familiarized himself with the record of the trial, may proceed with and finish the trial.

"(b) After Verdict or Finding of Guilt. If by reason of absence, death, sickness or other disability the judge before whom the defendant has been tried is unable to perform the duties to be performed by the court after a verdict or finding of guilt, any other judge regularly sitting in or assigned to the court may perform those duties; but if such other judge is satisfied that he cannot perform those duties because he did not preside at the trial or for any other reason, he may in his discretion grant a new trial."

**4.** The States and territories having such rules are: Alaska, Rules of Crim Pro, rule 25; Arizona, Rules of Crim Pro, rule 19.5; California, Penal Code, § 1053; Delaware, Court of Common Pleas Rules of Crim Pro, rule 25; Florida, Rules of Crim Pro, rule 3.231; Iowa, Rules of Crim Pro, rule 18, subd 7, par b; Maryland, Rules of Crim Pro, rule 750; Massachusetts, Rules of Crim Pro, rule 38; Minnesota, Rules of Crim Pro, rule 26.03, subd 13; Nevada, Rev Stat, § 175.091; North Dakota, Rules of Crim Pro, rule 25; Ohio, Rules of Crim Pro, rule 25; Puerto Rico, Rules of Crim Pro, rule 186; Virgin Is., Rules of Crim Pro, rule 25; Virginia, Code § 19.2-154; Wyoming, Rules of Crim Pro, rule 26.

priate to inform the jury of the illness of Judge SHEA and of his expected return to court the next day.

Judge LEVITTAN's ruling on the application for a mistrial, on this record, required merely an appreciation of the length of time the jury had deliberated in the context of the request it had made.

To comply with the jury's request, Judge LEVITTAN ordered a rereading of a portion of the instructions originally given to the jury by Judge SHEA and accepted the verdict—purely ministerial exercises requiring no additional elaboration on the law or recourse by Judge LEVITTAN to the record. If Judge LEVITTAN had elaborated on the law imparted to the jury by Judge SHEA, a different problem would confront us. But such is not the case here (see *United States v La Sorsa, supra,* pp 530-531; *Simons v United States,* 119 F2d 539, 543-545), and we make no judgment on that issue.

We conclude that, in the circumstances here, substitution of Judge LEVITTAN in place of Judge SHEA did not deny defendant his constitutional right to trial by jury and right to have the same Judge preside throughout the trial.

Our ruling here is consistent with a judicial policy to facilitate the administration of justice, a policy which seeks to eliminate delay in the trial of criminal actions or costly retrial, with due regard for the constitutional rights of a defendant. In *People v Ganci* (27 NY2d 418, 424) the Court of Appeals declared:

"The judicial establishment must itself reexamine its own methods of doing things to see if time can be saved in the process, and so accommodation given to more cases in a day's work * * *

"Therefore, if we can expedite the movement of cases and minimize delay by improvement of judicial procedures and techniques, we should set about to do it. Some changes may be beyond our power, but what we can do we should do."

We address next defendant's claim that the verdict was coerced because the jury was told it would be kept over for a second night if it had any questions. That claim, too, is untenable. On the first day of the trial, the jury had rejected the option proposed by Judge SHEA to return a partial verdict. This indicated a willingness on the part of the jury to take whatever time was necessary to consider all the issues in the case prior to the return of a verdict. No protest by any

member of the jury is found in the record when the jury was ordered sequestered after the first day of deliberations. Nor does the record disclose that the possibility of sequestration for a second night had, as defendant contends, a "chilling effect" on the jury's deliberations. Defendant's claim is purely speculative.

We consider now defendant's contention that he was convicted of a crime with which he never was charged, in that the indictment charged he stole property from Robert Pratt whereas in fact Pratt did not own the property. We find this claim of defendant also untenable—he was convicted of the charges stated in the indictment.

Each robbery count charged defendant with stealing personal property from Pratt, the security lieutenant. The trial evidence showed that defendant stole from the Universal terminal property consigned to Universal for shipment and that at the time of the theft Pratt was employed to guard Universal's premises. Although Pratt was not the title owner of the property stolen, he was an "owner" of that property within the meaning of the Penal Law, for his possessory right, as a security employee of an independent contractor which had undertaken to protect property bailed to Universal, was "superior to that of the taker, obtainer or withholder" (Penal Law, § 155.00, subd 5; see *Phelps v People,* 72 NY 334, 357-360; see, also, *People v Coates,* 64 AD2d 1, 8).

Defendant's final contention, i.e., that in defining reasonable doubt as "an honest reasonable substantial uncertainty as to the defendant's guilt which arises from the evidence or lack of evidence in a case," the court diminished the People's burden of persuasion and thus denied defendant a fair trial, is without merit.

Defendant's objection to the reasonable doubt charge at trial was that the court spent too much time on the negative aspects of reasonable doubt "without clearly indicating what [reasonable doubt] meant."

The People maintain that defendant's objection to the charge did not preserve his argument for review and furthermore that a "substantial doubt" is a "reasonable doubt" *(People v Jones,* 27 NY2d 222, 225-226).

However much one may be tempted by a generous reading to find defendant's objection sufficient, the fact is defendant failed to point to the error of which he complains (CPL 470.05, subd 2; *People v Cerrato,* 24 NY2d 1, 10, cert den 397 US 940;

*People v Feld,* 305 NY 322, 332). Nowhere does it appear that defendant complained of the use of the word "substantial" in the charge. In any case, if, as *Jones* held *(supra,* pp 225-226), a reasonable doubt is a "doubt for which there is a substantial reason", it was not error in the context of the court's instructions to explain "reasonable doubt" in terms of "substantial uncertainty." We find that the charge concerning reasonable doubt was fair and well balanced as to the affirmative and negative aspects of the concept of reasonable doubt.

The judgment of the Supreme Court should be affirmed.

KUPFERMAN, J. P., FEIN, BLOOM and LUPIANO, JJ., concur.

Judgment, Supreme Court, New York County, rendered on July 6, 1977, affirmed.