THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* PAUL DOUGLAS MOON, Defendant-Appellant.

Fifth District    No. 80-448

Opinion filed June 11, 1982.

Randy E. Blue and E. Joyce Randolph, both of State Appellate Defender's Office, of Mt. Vernon, for appellant.

John Ward, State's Attorney, of Taylorville (Martin N. Ashley and Stephen E. Norris, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

PRESIDING JUSTICE KARNS delivered the opinion of the court:

Defendant, Paul Douglas Moon, appeals from a judgment of conviction entered on a jury verdict in the Circuit Court of Christian County finding him guilty of the offense of murder. He was sentenced to a term of 40 years' imprisonment.

On appeal, defendant raises the following issues: (1) whether the trial court erred in failing to give his tendered instructions on the defense of voluntary intoxication; (2) whether the trial court erred in failing to instruct the jury *sua sponte* on the definition of armed robbery, the predicate felony to the charge of felony murder; (3) whether the trial court erred in giving a supplemental jury instruction; and (4) whether the trial court abused its discretion in sentencing him to a term of 40 years' imprisonment where a co-felon received a term of 32 years' imprisonment.

Evidence introduced at trial establishes that on the afternoon of March 5, 1980, defendant and Nicky John Clucas joined Ronald Dean Battles at the Pasttime Club, a tavern located in Pana, Illinois, where they drank, talked and played pool for about two hours. Prior to leaving the tavern, defendant purchased a case of beer and Battles purchased a quart of vodka. Battles invited defendant and Clucas to his brother's house in Millersville and Clucas called his friend, Tom Coleman, for a ride. Coleman picked up the men at the Pasttime Club and on the way to Millersville they stopped at the Victory Tavern where Battles went inside to purchase more liquor. Coleman testified that while Battles was inside the tavern, defendant and Clucas told Coleman that they planned to beat Battles and take his money. After arriving at the house, Coleman drank one beer and left.

At trial, Clucas admitted that he had pleaded guilty to Battles' murder and was awaiting sentencing. Clucas stated he first met Battles on March 5. He claimed that only defendant made statements to Coleman concerning the plan to beat and rob Battles. Clucas testified that after Battles made two sexual advances towards him he hit Battles three times with his fist. Clucas further testified that defendant and Battles then went into the bedroom and that he heard sounds as if someone was being

struck. Clucas then related that after he and defendant revived Battles in the bathtub, they both struck Battles repeatedly with their fists and with two wooden boards or clubs.

The recorded statement made by defendant to the police following his arrest that evening was heard by the jury. Defendant recalled the plan to get Battles drunk, beat him and take his money. Defendant stated that after they had been drinking at Battles' house and Clucas continually "egged it on," to get the money, defendant devised a scheme to get Battles' pants off in order to search the pockets for money. Defendant then hit Battles and tied his wrists and ankles with belts. Defendant stated that Clucas entered the bedroom and began hitting Battles in the head with a board while they both asked Battles where his money was located. Defendant then threatened Battles with a large fork that he had taken from the kitchen. Defendant stated that he wanted to "get even" with Battles because Battles the previous year had drugged him and sexually assaulted him. Defendant stated that he only hit Battles once with the club striking him on the back. Defendant further stated that he took about 75 cents from Battles.

Defendant and Clucas were walking towards Pana when they were given a ride by Phillip Palmer. Palmer took the men to the address that they gave him. Palmer saw defendant and Clucas squat behind a car, thought it was suspicious, so he drove to the police station to report the incident.

Shortly thereafter, Benny Battles arrived at the police station. He and his wife had returned to their home and found his brother's body. Given the information from Palmer and Battles, the police officers went to look for defendant and Clucas. They were located and arrested.

At trial, Dr. Slifer, who performed the autopsy, testified that Battles' death was caused by a compressed skull fracture on the left side of the head. He also found that the jaw had been broken on both sides, there were abrasions on the knees and forehead and puncture wounds on the back which appeared to have been made by a large fork.

Defendant first assigns as error the refusal of the trial court to give his tendered instructions on the defense of intoxication. He argues, in substance, that the evidence was sufficient to place before the jury the question of whether he was so intoxicated as to negate the intent to commit murder.

During the instructions conference, defendant tendered Illinois Pattern Jury Instructions, Criminal, No. 24.02 (1968) (hereinafter cited as IPI Criminal) ("Voluntary Intoxication or Drugged Condition") and IPI Criminal No. 25.02 ("Issues in Defense of Voluntary Intoxication or Drugged Condition"). At defendant's request, defense counsel did not tender an instruction on voluntary manslaughter. The trial court refused

these instructions on the basis that there was insufficient evidence to raise the defense of intoxication. We conclude that a fair reading of the evidence supports the trial court's refusal to give the tendered defense instructions on intoxication.

■■ In order to raise the defense of voluntary intoxication, the accused must show that his intoxication was so extreme as to suspend all reason. (*People v. Zynda* (1977), 53 Ill. App. 3d 794, 368 N.E.2d 1079.) Merely being drunk or intoxicated is insufficient to create a defense of intoxication (*People v. Williams* (1973), 14 Ill. App. 3d 789, 303 N.E.2d 585.) At trial, Clucas testified that on the date the offense was committed, he and defendant drank a quart of gin, and they drank several beers and about two quarts of vodka with the victim. He further testified that after leaving Battles' house, defendant was staggering and needed assistance to get into Palmer's van. Palmer testified that he saw defendant walking along the highway and when he backed up his van to offer defendant a ride, defendant was lying on the highway. Palmer also stated that defendant was unable to sit upright in the van without Clucas' help.

Although the evidence showed that defendant had been drinking, no evidence was introduced to prove that defendant's mental processes were so impaired that he was unable to reason. Indeed, defendant's recorded statement belies this contention. A detailed recollection of the offense tends to prove that the defendant's power of reasoning was not suspended entirely. (See *People v. Walcher* (1969), 42 Ill. 2d 159, 246 N.E.2d 256; *People v. Hare* (1962), 25 Ill. 2d 321, 185 N.E.2d 178.) Defendant's statement showed a detailed memory of the brutal attack on the victim. Defendant recalled his plan to get the victim drunk in order to take his money. Defendant also stated that the victim had made a sexual advance towards him the previous year and he wanted to "get him back." Although defendant claimed a lack of memory of the events following the murder, at no time did defendant state that he did not know what he was doing during the commission of the offense.

We conclude that the evidence would not have justified a jury determination that defendant was so intoxicated as to suspend his power of reason entirely. Therefore, we hold that the trial court did not err in refusing the tendered defense instructions on intoxication.

Defendant next contends that the trial court committed reversible error in failing to instruct the jury on the definition of armed robbery, the predicate felony to the alternative charge of felony murder.

The trial court gave defendant's tendered definitional and issues murder instructions. (IPI Criminal Nos. 7.01 (modified) and 7.02 (modified).) The given instructions defined murder as follows:

"A person commits the crime of murder who kills an individual if, in performing the acts which cause the death,

(1) he intends to kill or do great bodily harm to that individual; or

(2) he knows that such acts will cause death to that individual; or

(3) he knows that such acts create a strong probability of death or great bodily harm to that individual; or

(4) he is committing the crime of armed robbery."

Defendant failed to tender an instruction on the definition of armed robbery, but now argues that such failure did not constitute a waiver because the omitted instruction related to the essential elements of the charged offense.

■■ It is primarily the duty of the parties and not the trial court to prepare jury instructions. (Ill. Rev. Stat. 1979, ch. 110, par. 67; 73 Ill. 2d R. 451.) In addition, "no party may raise on appeal the failure to give an instruction unless he shall have tendered it." (73 Ill. 2d R. 366(b)(2)(i); *People v. Underwood* (1978), 72 Ill. 2d 124, 129, 378 N.E.2d 513, 515.) In criminal cases, however, the waiver rule does not preclude judicial review of "substantial defects" in the jury instruction where "the interests of justice require." (73 Ill. 2d R. 451(c).) The issue raised, therefore, is whether the definitional instruction on armed robbery was so basic as to the murder instructions that the failure of the trial court to *sua sponte* give the instruction resulted in an unfair trial. See *People v. Underwood*; *People v. Carey* (1981), 94 Ill. App. 3d 631, 418 N.E.2d 1119.

The committee comment to IPI Criminal No. 7.01 states that when the felony murder instruction is given, it should be followed immediately by a definition of the applicable forcible felony. We are of the opinion, however, that under the facts of this case, the failure of the trial court to give the instruction *sua sponte* did not constitute a "substantial defect."

■■■ In the instant case, the jury was properly instructed on the alternative theories of murder. In addition, there was sufficient evidence to sustain a verdict of guilt on the alternative charges of murder. A general verdict of guilty is presumed to be based upon any proper count in the indictment to which the proof is applicable. (*People v. Collins* (1979), 71 Ill. App. 3d 815, 390 N.E.2d 463.) Because there is sufficient evidence to sustain a verdict of guilt on the alternative charge of murder, we need not consider whether the trial court erred in failing to *sua sponte* instruct the jury on the definition of the predicate felony. (See *People v. Collins*.) We conclude, therefore, that the omitted instruction was not so basic to the murder instructions that the failure of the trial court to *sua sponte* give it resulted in an unfair trial.

Finally, we note that although we hold that the trial court did not err in this regard, any error would be harmless. Defendant in his recorded statement admitted that he and Clucas planned to get the victim drunk in order to take his money and that he took about 75 cents. That a robbery

was committed by defendant was conceded by defense counsel in his closing argument. The evidence also showed that the victim was beaten by two wooden boards. Therefore, reversal of the conviction on the ground now urged by defendant would be inappropriate. See *People v. Jones* (1979), 81 Ill. 2d 1, 405 N.E.2d 343.

Defendant next contends that the trial court erred in giving a supplemental instruction defining "act" (IPI Criminal No. 4.01) in response to the jury's request for clarification.

The record shows that a conference was held about 2½ hours after the jury began its deliberations. Judge Dailey stated that he had been requested to take the verdict because Judge Hickman, who presided at trial, had left the county. The judge instructed the bailiff to have the jury submit its question in writing. The bailiff returned with the issues murder instruction (IPI Criminal No. 7.02 (modified)) and the accountability instruction (IPI Criminal No. 5.03). On the murder instruction, the jury had placed a cross and underlined the following: "First: That the defendant performed the acts which caused the death of Ronald Dean Battles." The record does not contain a written question by the jury. The court determined that the jury's inquiry concerned the definition of "act," and, therefore, instructed the jury on that definition (IPI Criminal No. 4.01) over objection of defendant. Defendant did not tender a supplemental instruction.

Defendant now argues that he was denied a fair trial because the substituted judge had no authority to act, and, alternatively, that the supplemental instruction confused the jury.

■■■ We have examined the cases relied upon by defendant and find that they do not support the proposition that the substituted judge had no authority to issue the instruction. A party is entitled to the judgment of one judge until the jury retires to consider its verdict. A judge may, however, replace the judge who presided at trial after the jury has retired to begin its deliberations. (*People v. Mays* (1962), 23 Ill. 2d 520, 179 N.E.2d 654; *Huwe v. Commonwealth Edison Co.* (1975), 29 Ill. App. 3d 1085, 332 N.E.2d 60.) Although the trial judge should be present where a motion or other matter develops that requires personal knowledge of the case (*Huwe v. Commonwealth Edison Co.*), we need not determine whether this principle applies to the instant case because we find that the jury was properly instructed.

In support of his contention that the instruction confused the jury, defendant argues that the instruction defining "act," which includes a failure to act, impermissibly allowed the jury to determine his guilt on an accountability theory merely because he failed to stop Clucas from murdering Battles. We disagree. Although the record does not contain a written question by the jury, the jury's inquiry evidenced confusion con-

cerning the possibility of convicting defendant on an accountability theory where the murder instruction referred solely to an act performed by defendant. The jury may have had some doubt as to whether they could convict defendant of murder if he did not strike the fatal blow. Clearly under the evidence presented they could do so. The jury was properly instructed on accountability. A person is accountable for the conduct of another when either before or during the commission of an offense, with the intent to promote its commission, he solicits, aids or abets another in the planning or commission of that offense. (Ill. Rev. Stat. 1979, ch. 38, par. 5—2(c); *People v. Wallace* (1981), 100 Ill. App. 3d 424, 426 N.E.2d 1017.) Here defendant bound the hands and feet of the victim and beat him repeatedly. Defendant claimed that it was Clucas and not he who hit Battles in the head with the club. Even if the jury accepted defendant's version of the commission of the crime, it was clear that he aided Clucas in murdering Battles. We are of the opinion the supplemental instruction properly informed the jury that they could convict defendant even if they found that he did not strike the fatal blow.

Defendant now argues, and the State concedes, that it would have been proper for the court to amend the issues murder instruction to include the phrase "or a person for whom he is legally responsible" after the word "defendant". (See IPI Criminal No. 5.03, Committee Note (2d ed. 1981).) Defendant did not tender such an amendment at the conference. Although the amendment would have been proper, we find that the court satisfactorily achieved the purpose of properly instructing the jury and that the supplemental instruction did not result in prejudice to the defendant.

Defendant finally contends that the trial court abused its discretion in sentencing him to a term of 40 years' imprisonment where there was no justification for his co-felon's disparate sentence of 32 years' imprisonment.

■■■ In order to determine whether a sentence is excessive in light of a lesser sentence imposed on an individual convicted as a result of the same offense, it is necessary to consider differences in criminal background and the degree of participation by each in the commission of the offense. (*People v. Martin* (1980), 81 Ill. App. 3d 238, 401 N.E.2d 13.) A disparate sentence is appropriate where the defendant receiving the more severe sentence was the moving force in the commission of the crime (*People v. Massarella* (1979), 80 Ill. App. 3d 552, 400 N.E.2d 436) or has a more serious criminal record. (*People v. Henne* (1973), 10 Ill. App. 3d 179, 293 N.E.2d 172.) Additionally, the trial judge's decisions in regard to sentencing are entitled to deference on review and may not be altered absent an abuse of discretion. *People v. Perruquet* (1977), 68 Ill. 2d 149, 368 N.E.2d 882.

■■ At the sentencing hearing, the court noted both the heinous nature of the crime and the statutory proscription against disparate sentences for similarly situated defendants. The court found that in light of defendant's background, age and prior connection with the victim, a greater sentence than that imposed on Clucas would be appropriate. We conclude that the record amply supports the court's determination and find no abuse of discretion in the sentence imposed on defendant.

The judgment of the Circuit Court of Christian County is affirmed.

Affirmed.

JONES and WELCH, JJ., concur.