FIRST DEPARTMENT, AUGUST, 1992

(August 6, 1992)

■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v DONALD WILLIAMS, Appellant.—Judgment, Supreme Court, Bronx County (Frank Diaz, J.), rendered October 3, 1989, convicting defendant after a jury trial of robbery in the first degree, and sentencing him to a term of imprisonment of 4 to 12 years, unanimously affirmed.

Defendant and his accomplice, whose appeal is decided simultaneously herewith (People v Maiello, 185 AD2d 726), were convicted after jury trial of robbing the cashier of a bakery. Defendant, who had entered the bakery the day before with an unidentified woman, was the knife wielding robber. The co-defendant acted as the lookout. After defendant took cash and food stamps, he joined the co-defendant on the street. The co-defendant asked if everything was okay and the two of them then fled in a waiting cab. The cab, however, was followed by the cashier's cousin, who had been waiting to park in the cab's space, and a witness to whom the cashier had reported the robbery. When the cab stopped several blocks later, defendant and co-defendant went into a building lobby. The co-defendant emerged shortly thereafter, and within minutes was taken into custody. At the same time the cousin of the cashier spotted defendant looking out of a window, and minutes later defendant was taken into custody. Defendant and his jacket were later identified by the cashier and $79 in cash was recovered from defendant's sock, and $100 from the co-defendant.

During the cross-examination by co-defendant's counsel, the cashier's cousin denied that the trial assistant had visited with her at the butcher shop, where she worked and which was located next to the bakery, in counsel's words, "about a month ago or so." Asked if a "two hour" visit had occurred

724

within "the last month or two months, not in the D.A.'s office, up at the store," the witness said, "I don't remember. I don't think so. She called me by phone that I had to be——." Asked whether if such a visit had occurred, she would remember it, the witness said yes. Immediately on redirect, she was asked by the prosecutor, "[D]id I go to the store and talk to you for two hours in the store?" The witness said no. That was followed by the question, "Any idea what would make him come up with that off-the-wall question?" This question prompted the court to caution the prosecutor.

The next day, after co-defendant's counsel had indicated that he could show that the cashier's cousin had given "false and perjurious" testimony, the prosecutor said that she had spoken with the witness for "ten minutes" at the store. After the prosecutor turned down the court's suggestion that the jury be told that the prosecutor had spoken with the witness for ten minutes, the court ruled that it would not permit co-defendant's counsel to call the butcher store manager to impeach the witness. The court also told the prosecutor that she would have been better served had she clarified the matter on redirect with a leading question.

Guided by the view that "due process" is predicated "both upon 'elemental fairness' to the defendant, and upon concern that the prosecutor's office discharge its ethical and professional obligations" (People v Vilardi, 76 NY2d 67, 76 [1990]), we conclude that the trial assistant did act improperly (see, People v Holder, 168 AD2d 284 [1990], lv denied 77 NY2d 839 [1991]; see generally, People v Zimmer, 51 NY2d 390 [1980]). However, we do not find that application of the paramount principle that "[t]he administration of justice must not only be above reproach, it must also be beyond the suspicion of reproach" (People v Savvides, 1 NY2d 554, 556 [1956]) requires a reversal here. The error, which was unpreserved by defendant (People v Buckley, 75 NY2d 843, 846 [1990]), does not involve the failure to disclose exculpatory material (see, People v Vilardi, supra). Nor does the case involve the failure to disclose a cooperation agreement (People v Savvides, supra; People v Cwikla, 46 NY2d 434, 441 [1979]). We find that there is no reasonable possibility that the proposed impeachment of the cousin's credibility, had the Assistant District Attorney been straightforward in dealing with the cousin's faulty memory, would have affected the outcome of defendant's case.

Contrary to defendant's further argument, the court did not err when it responded to the jury's request for a further charge on circumstantial evidence by having the court re-

porter read the portion of the main charge addressing circumstantial evidence to the jury, some of which the court had given "off the top of my head" *(see, People v Lewis,* 71 AD2d 7, 12 [1979]), and then adding to those instructions. Defendant argues that the court itself had to deliver the recharge to satisfy the requirements of CPL 300.10 (1), but we do not interpret the statute so literally *(see generally, People v Malloy,* 55 NY2d 296 [1982], *cert denied* 459 US 847 [1982]). Nor do we find that defendant's right to be present at trial was violated when a juror was briefly questioned in the robing room in his absence *(People v Grant,* 178 AD2d 283 [1991], *lv denied* 79 NY2d 920 [1992]) and then excused. The juror stated that because she believed that she had seen the defendant in her neighborhood and believed that she might meet him again (in reality the defendant was in jail at the time she believed she had seen him), she would be afraid to vote guilty. Defendant has adopted co-defendant's argument that his right to a fair trial was violated by the prosecutor's summation, but for the reasons discussed in the disposition of the co-defendant's appeal, we reject that claim. Concur—Murphy, P. J., Carro, Milonas, Wallach and Smith, JJ.